400 So.2d 640 (1981)
STATE of Louisiana
v.
Alvin SYLVESTER, Jr.
No. 80-KA-2942.
Supreme Court of Louisiana.
June 22, 1981.
*641 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard Knapp, Dist. Atty., Evelyn Oubre, Charles Richard, Asst. Dist. Attys., for plaintiff-appellee.
Phillip S. St. Romain, Jack Rogers, Harold Thibodeaux, Lake Charles, for defendant-appellant.
MARCUS, Justice.
Alvin Sylvester, Jr. was indicted by the grand jury for two counts of first degree murder in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty as charged on both counts. A sentencing hearing was conducted by the same jury that determined the issue of guilt. The matter was submitted on the evidence of the trial on the issue of guilt without introduction of other evidence. The jury unanimously recommended that a sentence of death be imposed on defendant for each count. The trial judge sentenced defendant to death in accordance with the recommendations of the jury. On appeal, defendant relies on twenty assignments of error for reversal of his convictions and sentences. Finding reversible error in two of the contentions raised under Assignment of Error No. 3, we need not consider the others or those raised under the remaining assignments of error. However, we have chosen to discuss defendant's contention under Assignment of Error No. 10 because it concerns an issue that may be raised on a new trial.

FACTS
On the evening of July 15, 1979, defendant, along with Brad Lewis and Ernestine Guillory, went to the White Eagle Lounge in Lake Charles. At about midnight, the group was occupying a table adjacent to that of Darrell Walker and his sister, Dorothy Walker. Apparently, Mr. Walker had danced with Ms. Guillory during the evening *642 and defendant had danced with Ms. Walker. None of the members of the parties knew each other prior to that evening. At this point, Brad Lewis asked Ms. Walker to dance and she refused. Words were exchanged and an argument ensued. A scuffle broke out involving the male members of the two parties and Ms. Walker was knocked to the floor. With the help of several bystanders, the manager of the lounge broke up the fight and ejected the participants from the bar. Defendant and Brad Lewis left first, followed a short time later by the Walkers. On the outside of the lounge, Ms. Walker displayed a pistol. There was also evidence that she possessed the gun while inside of the bar. The manager instructed the Walkers that they would have to leave and last saw them as they were walking toward their car.
There is conflicting testimony as to exactly what transpired next. An eyewitness for the state testified that the Walkers got into their car with Ms. Walker driving and attempted to start the engine. Though the accounts varied, witnesses for the defense generally testified that one of the Walkers fired several shots from a pistol into the air or in the direction in which defendant and Brad Lewis were leaving the scene. In any event, defendant went to his car and removed his 30-06 bolt-action rifle from beneath the rear seat. He returned to the parking lot near the lounge and fired three shots from close range at the Walker vehicle. The first shot apparently struck the pavement and fragmented. The second shot struck Darrell Walker in the head and the third shot struck Dorothy Walker in the face. Both of the victims died as a result of these wounds. Defendant fled the scene on foot.
A Lake Charles City Police patrol unit was dispatched to the scene of the shooting at 1:03 a. m. on July 16, 1979. The victims were found inside of their vehicle. A chrome-plated revolver with five spent shells in the cylinder was found beneath the passenger seat of the Walker vehicle. Three bullet casings from a 30-06 rifle were also found at the scene. On the following day, July 17, 1979, defendant surrendered himself to the Lake Charles City Police, maintaining that he had acted in self-defense. A subsequent investigation at the scene of the shooting revealed no physical evidence that shots had been fired by the Walkers prior to their deaths.

ASSIGNMENT OF ERROR NO. 3
Under this assignment of error, defendant contends, inter alia, that the trial judge erred in denying his challenges for cause of prospective jurors Mrs. Bobby Ray Miller and Frank Landry. He argues that, because of these erroneous rulings, he was forced to accept Mrs. Miller as a juror and compelled to exercise one of his peremptory challenges to excuse Mr. Landry, thereby depriving him of one of his twelve peremptory challenges.
La.Code Crim.P. art. 797 provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; ....
La.Code Crim.P. art. 800 provides in pertinent part:
A defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel.
*643 Where an accused has exhausted all of his peremptory challenges before completion of the panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause made by him. He need only show two things to obtain reversible error: (1) that the trial judge erred in refusing to maintain a challenge for cause by him; and (2) that he exhausted all of his peremptory challenges. He need not make the additional showing of injury resulting from the court's action by forcing him to accept the challenged juror. The trial judge is vested with broad discretion in ruling on a challenge for cause which ruling will not be disturbed on appeal absent a showing of abuse of that discretion. However, service on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause; such association does not automatically disqualify a prospective juror. State v. McIntyre, 365 So.2d 1348 (La.1978).
During voir dire, defendant questioned Mrs. Miller as to her religious preference. She stated that her preference was Alleluia Acres, a non-denominational Christian church. She also stated that her literary preferences were Christian literature and the Bible. At that point the following colloquy took place between the prospective juror and defense counsel:
Q During the course of this trial, the issue of self-defense will be brought out, do you believe in the right of man or a person to defend himself or to defend someone else?
A Do what?
Q Do you believe in the right of a man or ... or a person to ... to defend himself or to defend someone else?
A No.
Q You do not believe that he should be permitted to defend ... defend himself?
A Well, my belief, ... Jesus, you know, you trust in him and he defends you.
Q And if the Judge were to instruct you that the law of the State of Louisiana is that under certain situations, you have a right to defend yourself from bodily harm, or possibly death, or to defend someone else in bodily harm or possibly death, if you have that right and if it is shown that you were acting reasonably in self-defense and killed the other person that this would justify the killing ... if the Judge were to instruct you that ... that would be the law, could you apply that?
A You mean myself?
Q Yes, ma'am.
A Well, I don't know. I ... if someone was really going to hit me or hurt me real bad, I don't know if I could follow through with what I say I believe in. You know, haven't been to test. I hope and pray that I could.
Q Okay. Okay, of course, now, it's part of your duty, your civic duty as a juror, of course, is ... will be to hear the evidence presented in this case and to pass judgment on the guilt or innocence of Alvin Sylvester ...
A Um-hmm.
Q ... and he is charged with two counts of first degree murder, very serious charges, which we all agree, and, of course, he has not been proven guilty of these charges. There are charges and charges alone. At this point, he stands presumed to be innocent. If the State proves that he, in fact, killed these people, and he did it under the critera [sic] wherein the murder might be return ... the verdict of murder might be returned, the defense will also present evidence in... in terms of self-defense, and it's quite possible that he acted in self-defense. In fact, well ... if I understand you correctly, you could maybe... you're not sure about self-defense. Maybe in some situation, you might defend yourself, but you don't agree with the idea of self-defense, and you might have trouble finding self-defense in someone else's actions, do I understand that correctly?
*644 A I don't believe that you ... you don't protect ... you know, there's ... I don't ... on myself, I don't need defending. Jesus defends me.
Q Okay, and ... and you feel that Jesus should defend all of us?
A Right ...
Q And that ...
A ... trust in him.
Q And is that an absolute trust that you feel that no one should ... should take up arms against anyone else for any ... any circumstances whatsoever?
A Well, you ... you know, you're talking about just somebody combating you ... coming against you? Like I said, I ... I haven't really stood and defended this, but this is not the way that I feel in my heart.
Q Okay, there may be situations where a person is justified by law in defending himself even if no weapon is found in the hands of the other person... let's assume there are two people involved, the victim and a ... and a person who was charged with the crime ... that is, there may be a situation where the victim, or the supposed victim did not even have a weapon in his hand, but the person who is charged with the crime who is claiming self-defense has a weapon, of course, and kills ... and kills the victim, the supposed victim, and it turns out the victim did not even have a weapon in his hand, but there... he might have conducted himself in such a manner that the person who did the killing thought that he was in danger of being dilled [sic] himself, or thought that he was in danger of receiving grave bodily harm, and acted to defend himself, finding out later on there was no weapon in the other person's hand, do you think my hypothetical defendant here would be justified in self-defense?
A Huh-huh. You don't defend ... well... I don't believe you defend yourself.
Q Okay, now ...
A If you completely give your life to Jesus, that's just the way I feel. Then you don't need to be ... you know, He takes care of you.
This colloquy constituted all of Mrs. Miller's responses on the issue of self-defense. At no time during the examination of the prospective juror did the state ask any questions relating to this issue. At the conclusion of questioning by defendant, the state accepted the juror. Based on his examination, defendant challenged Mrs. Miller for cause. The trial judge denied defendant's challenge for cause without asking any questions of the prospective juror. Defendant objected to the trial judge's ruling but accepted Mrs. Miller as a juror. The record reflects that defendant's peremptory challenges were exhausted before the completion of the panel; therefore, his objection to the ruling refusing to sustain his challenge for cause is properly before us. Defendant argues that the challenge should have been granted because of the prospective juror's testimony that she did not believe in self-defense and would not accept that defense even if instructed by the trial judge.
When questioned as to whether she believed in a person's right to self-defense, Mrs. Miller consistently responded that she did not. It is clear that her religious belief prevented her from accepting the concept of self-defense in any factual situation and that she would not accept the defense even if instructed by the trial judge. The state addressed no questions to Mrs. Miller on the issue of self-defense. No attempt to rehabilitate the prospective juror was made by the trial judge.
A review of the entire record, comprising 1343 pages, indicates that the sole and only defense raised by defendant was that of self-defense. From the time he turned himself in to the authorities through his testimony at trial, the defendant, while admitting that he shot the two victims, contended that he acted in self-defense. The crucial issue at trial and the one which elicited the *645 greatest amount of conflicting testimony was whether either of the victims had in fact fired shots from the pistol found in their car which might have led defendant to believe that his life or that of his friends had been threatened.
In view of Mrs. Miller's steadfast declaration that she could not accept the theory of self-defense because of her religious belief, we do not consider that she could render an impartial verdict according to the law and evidence. Additionally, she stated that she would not accept the law on self-defense as given her by the court. Hence, we find that the trial judge abused his discretion in refusing to maintain defendant's challenge for cause of this prospective juror. We must reverse because this erroneous ruling affected substantial rights of the accused. La.Code Crim.P. art. 921.
Next, we consider defendant's contention that the trial judge erred in denying his challenge for cause of prospective juror Frank Landry. He argues that given the totality of the circumstances and Mr. Landry's long relationship with law enforcement, Mr. Landry was not capable of serving as an impartial juror.
During voir dire, it was established that Mr. Landry had been employed by the Lake Charles City Police Department for a number of years.[1] Mr. Landry had worked as a detective for nine years and had served as chief of detectives for "a couple of years" before being promoted to the rank of Major. He had been retired for two years and four months at the time of trial. It was established that Mr. Landry has a son who is a sergeant with the Lake Charles City Police Department and serves as an investigator in the detective division. When asked by defendant if he knew state witness Sergeant David Wagner, Mr. Landry stated that he knew Sergeant Wagner and that Wagner had worked under his supervision for a number of years. He further stated that he had known Sergeant Wagner on the police department "from the day that he came on," a period which Wagner later testified was nearly fourteen years, and that he thought Wagner was "a very good police officer."
At trial, Sergeant Wagner, as the officer responsible for the investigation in this case, was a principal state witness. He testified that he had been a detective with the Lake Charles City Police for eleven years and served as the senior investigator in this case. Sergeant Wagner was present for much of the investigation at the scene of the shooting on the night of the incident. He also subsequently conducted a search for evidence related to defendant's defense at the scene and was in charge of securing and interviewing witnesses. He also compiled the offense report. Three other officers who served on the Lake Charles City Police Department while Mr. Landry was there also testified. Despite his long association with the police department and Sergeant Wagner, Mr. Landry stated that he would not tend to credit the testimony of Sergeant Wagner over that of other persons not in the department.
At the conclusion of questioning by defendant, the state accepted the juror. Based on his examination, defendant challenged Mr. Landry for cause. The trial judge then asked Mr. Landry if he felt that having served on the police department would have any influence on his decision in this case. Landry replied that he did not believe that it would. The trial judge then denied defendant's challenge for cause. Defendant objected to the ruling of the trial judge and peremptorily challenged Mr. Landry. The record reflects that defendant's peremptory challenges were exhausted before the completion of the panel. Hence, his objection to the ruling of the trial judge is properly before us.
Defendant established that Mr. Landry had been employed for many years with the Lake Charles City Police, the agency *646 which had conducted the investigation in this case. He had been retired from that department for only a relatively short time. He had a son who was currently serving with the detective division of that department. He had himself served as a detective with the department for nine years and had been chief of detectives for about two years. He had known the senior investigator in this case for fourteen years and had served as his supervisor for a number of years. He had also served on the department at the same time as three other officers who testified at trial. Due to the totality of these circumstances and particularly his long relationship with law enforcement, we do not consider that it is reasonable to conclude that Mr. Landry was capable of serving as an impartial juror despite his manifestations to the contrary. Hence, we find that the trial judge abused his discretion in refusing to sustain defendant's challenge of Mr. Landry for cause and that this erroneous ruling constitutes reversible error because it affected substantial rights of the accused. La.Code Crim.P. art. 921.

ASSIGNMENT OF ERROR NO. 10
Defendant contends the trial judge erred in denying his motion for mistrial after it was learned that defense witnesses Brad Lewis and Ronald Frelow had been arrested for intimidating state witnesses. Defendant argues that the state improperly used its arrest powers to intimidate defense witnesses into altering their testimony thus violating his constitutional rights to compulsory process and due process of law. Although we are reversing defendant's convictions and sentences on other grounds, we consider it necessary to dispose of the issue raised under this assignment of error as it is one likely to be raised again at the new trial.
Following a recess during the presentation of the defense witnesses, defendant moved for a mistrial based upon the arrest of two defense witnesses for public intimidation of state witnesses.[2] He argued that the arrests would intimidate those witnesses who were arrested and would affect their testimony and that of other defense witnesses who observed the arrests. The trial judge denied the motion but allowed a proffer of evidence to be adduced at a hearing following the conclusion of the trial. At that hearing, Lake Charles City Police Officer Craig Douglas testified that, while sequestered in a hallway outside the courtroom, defense witness Brad Lewis walked back and forth seven or eight times in front of a group of several state witnesses including himself; former officer Randall Hyatt; Joe Walker, brother of the victims; and Jerry Freeman, the prosecution's principal eyewitness, all of whom had already testified. Each time he passed, Lewis gave the group "a dirty look" and continued walking. Finally, Lewis turned and walked toward Freeman and lay down on a bench nearby. Lewis then quickly sat up, slammed his foot on the floor, and yelled "Snitch!" while looking directly at Freeman. Officer Douglas testified that Lewis then looked to see if there was any movement, to see if he had scared any of the witnesses, and then got up and walked away whistling.
Ronald Frelow also walked back and forth in front of the four witnesses several times and "continuously glared" at Walker and Freeman. On one occasion, he also turned and walked back toward Freeman, looked at him and said "Son of a bitch!" Officer Douglas stated that the manner in which this was said constituted a threat in his mind. Mr. Freeman then asked that Officer Douglas or another police officer stay with him at all times. Officer Douglas concluded by stating that he felt Lewis and Frelow were attempting to intimidate Walker and Freeman. Mr. Walker also testified *647 that he felt he was being intimidated at the time and that he was fearful. Both Walker and Freeman complained of these incidents to Scott Chaffin, an investigator with the Calcasieu Parish District Attorney's Office. Walker also told his father, Melvin Walker, who was a spectator at the trial, and he contacted Ms. Evelyn Oubre, the assistant district attorney prosecuting this case. She then advised Deputy John Clawson of the Calcasieu Parish Sheriff's Department who was in charge of courtroom security of the incidents and informed him of the charges on which Lewis and Frelow should be arrested. Deputy Clawson subsequently arrested Frelow and then Lewis in the hallway outside the courtroom. Both arrests took place quietly and without incident and outside the presence of the jury. Lewis and Frelow were later sequestered along with another defense witness, Ernestine Guillory, in the bailiff's room. The state witnesses were separately sequestered.
The record reflects that following Frelow's testimony, but prior to that of Lewis and Guillory, Ms. Oubre informed Lewis and his attorney that the state would not accept the public intimidation charges pending against Lewis or Frelow. Ms. Oubre specifically stated that the reason for her action was to prevent any form of prejudice to defendant related to Brad Lewis testifying on defendant's behalf.
U.S.Const. amend. VI provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...." The right of an accused to have compulsory process for obtaining witnesses in his favor is applicable to the states through the due process clause of the fourteenth amendment. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Also, La.Const. art. 1, § 16 (1974) provides in pertinent part: "An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf." La.Code Crim.P. art. 775 provides in part: "Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial...."
In the instant case, defendant made no showing that the arrests of the two defense witnesses were prejudicial to him. The arrests occurred outside the presence of the jury. There was no showing that the arrests were witnessed by any other defense witnesses. There was probable cause for their arrest. There was no evidence that the state acted in bad faith. To the contrary, the prosecuting attorney refused to accept charges against the two witnesses. Moreover, the record reflects that Brad Lewis, Ronald Frelow and Ernestine Guillory all subsequently testified favorably to defendant. There was no indication that their testimony was in any way affected by the arrests. Clearly, there was no violation of the constitutional rights of defendant which affected his right to a fair trial in this case or upon retrial. Hence, the assignment of error is without merit.

DECREE
For the reasons assigned, the convictions and sentences are reversed and the case is remanded to the district court for a new trial.
NOTES
[1] While the record is not clear as to the total years of service on the Lake Charles City Police Department by Mr. Landry, his testimony at one point suggests that he had been a member of that department for over 27 years.
[2] La.R.S. 14:122 provides in pertinent part:

Public intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
(3) Witness, or person about to be called as a witness upon a trial or other proceeding before any court, board or officer authorized to hear evidence or to take testimony.