438 So.2d 1340 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Douglas Warren FREEZE, Jr., Defendant-Appellant.
No. CR82-756.
Court of Appeal of Louisiana, Third Circuit.
October 20, 1983.
*1342 Ronnie K. Banks, Lake Charles, for defendant-appellant.
Jerry G. Jones, Dist. Atty., Cameron, for plaintiff-appellee.
Before STOKER, DOUCET and KNOLL, JJ.
DOUCET, Judge.
The questions presented are: whether a former law enforcement officer who had previously arrested defendant was improperly impaneled on the jury in this criminal proceeding, and, whether the defendant's sentence was properly imposed. We affirm.
Defendant, Douglas Warren Freeze, Jr., was arrested in Cameron, Louisiana and charged with aggravated criminal damage to property, a violation of LSA-R.S. 14:55. The facts giving rise to the arrest are as follows: Defendant, locally known as "Flea", and co-defendant Joseph Shea, were socializing at the Fiesta Lounge in Cameron, Louisiana on the evening of March 2, 1982, when defendant's girl friend entered the bar and tearfully related that she had been beaten by a male juvenile. The girl, Anna LaBiche, did not know her attacker's identity but stated that he was driving a blue pickup truck and was in the company of two other male juveniles. Forsaking any attempt to summon help from local law-enforcement officials, defendant enlisted the aid of Shea and approximately four other men, and set out to find Ms. Labiche's assailant. Defendant determined that safety and efficiency considerations demanded that they be armed so the party made a quick pit-stop at his house for firearms. He armed himself with a .357 magnum and Shea with a .16 gauge shotgun. They resumed the hunt and within a short time observed the blue truck stopped at an intersection. Defendant attracted the attention of the pickup's driver by ramming his own vehicle into the pickup's rear end. Defendant ordered Bruce Bang, the truck's driver, and Ms. LaBiche's alleged assailant to get out of the truck and announced that he intended to bring Bang to jail. As Bang attempted to step out of the truck to investigate, he was greeted by the gun-wielding defendant and Shea. The events which transpired next were the subject of conflicting testimony. Bang and his three passengers testified that a shot was fired almost immediately after Bang opened the truck door. Bang claims that the shot came from defendant's pistol. Defendant maintains that Shea fired the first shot and that his own gun accidentally discharged as Bang closed the truck door. In any event, Bang wasted little time in jumping back behind the wheel of his truck and speeding away. The pickup's flight drew more gunfire from defendant and Shea. A bullet from defendant's pistol struck the truck's bed near the driver's door. Shea fired at least twice into the right side of the truck and in the process injured the leg of a teenage boy. But the duo was unsuccessful in halting the truck's escape. Bang never slowed down until he chanced upon a deputy sheriff a few miles down the road. The group related their story to the officer, and defendant and Shea were apprehended and taken into custody shortly thereafter.
After arrest, defendant remained in jail, unable to post bond. His motion for reduction of bond was denied by the trial judge. *1343 Subsequently, the Supreme Court granted writs of review, declared the bond excessive and set bond at $10,000.00. Motions for Suppression of Evidence, Continuance, Suppression of Confession, and Appointment of an Investigator were denied.
At the beginning of the trial, the drawing for the jury was conducted. Defendant exhausted all peremptory challenges prior to completion of the panel. When prospective juror George Griffith was questioned, it was revealed that he had been employed as a deputy sheriff with the Cameron Parish Sheriff's Department and had quit about two (2) years prior to the date of defendant's trial. Moreover, according to defendant, Mr. Griffith had arrested defendant previously on at least two occasions. Mr. Griffith admitted knowing defendant, and recalled arresting him on one occasion, however, he did not remember the details of any arrests due to the multitude of cases he dealt with while a deputy sheriff. When questioned further, Mr. Griffith believed he had cited defendant for littering or possibly a minor driving offense. The State sought to rehabilitate the prospective juror, however, they offered no evidence to contradict defendant's allegation that Mr. Griffith had arrested him several times in the past. Counsel for defendant challenged Mr. Griffith for cause. The challenge was rejected. Thereafter, the defendant was found guilty and sentenced to nine years in jail.
Appellant contends that the seating of Mr. Griffith on the jury denied him of his right to a trial by an impartial jury. Additionally, appellant asserts the trial judge erred in failing to comply with La.C.Cr.P. arts. 873 and 894.1 and further imposed an excessive sentence.
Both our federal and state constitutions guarantee the accused in a criminal proceeding the right to a trial by an impartial jury. 6th Amendment, U.S. Constitution; La. Constitution, Art. 1, § 16. Additionally, La.C.Cr.P. art. 797 protects the right to an impartial jury. The reason for the right was expressed in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), as follows:
"Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official powera reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges."
Implicit in the right to a jury trial is the guarantee that an accused will receive an impartial jury. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Irvin v. Dowd, supra. As was stated in Hayes v. Missouri, 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578, "It is to be remembered that such impartiality requires not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held."
Just as one biased against the State may be precluded from serving on a jury, La.C.Cr.P. arts. 401(5), 787, 797, 798, service on a criminal jury by one associated with law enforcement duties must be closely scrutinized. State v. Winn, 412 So.2d 1337 *1344 (La.1982); State v. Sylvester, 400 So.2d 640 (La.1981); State v. Lewis, 391 So.2d 1156 (La.1980); State v. McIntyre, 365 So.2d 1348 (La.1978); State v. Monroe, 366 So.2d 1345 (La.1978).
A prospective juror's statement that he will be fair and impartial is not binding on the court. State v. Lewis, supra; State v. Sylvester, supra. If the revealed details of the relationship are such that bias or prejudice may be reasonably implied, a juror may be properly refused for cause. State v. Monroe, supra; State v. Lewis, supra.
A defendant has standing to complain of a trial judge's refusal to maintain his challenge for cause when he has exhausted all of his peremptory challenges before completion of the panel. La.C.Cr.P. art. 800, State v. Qualls, 353 So.2d 978 (La. 1978); State v. Ballard, 337 So.2d 481 (La. 1976); State v. Monroe, supra; State v. Lewis, supra; State v. Sylvester, supra.
In Sylvester, prospective juror Frank Landry was challenged for cause due to his employment with the Lake Charles City Police Department two years prior to trial and his acquaintance with a State witness associated with the department. Despite his association with the department and witness, Mr. Landry stated he would not tend to credit the testimony of the State's witness over that of other persons not in the department. In reversing defendant's conviction, the Supreme Court stated: "... [W]e do not consider it reasonable to conclude that Mr. Landry was capable of serving as an impartial juror despite his manifestations to the contrary."
In Lewis, prospective juror Kay Howell had been employed by the district attorney as a law clerk for several months before the trial. She was awaiting the results of the bar exam and had filed an application with the district attorney for a job. The Supreme Court stated: "Under these circumstances, we conclude that the juror's relationship with the district attorney was such that it would influence the juror in arriving at a verdict, and the defendant's conviction, therefore, must be reversed."
Each case must be reviewed upon its own facts. Although the most expedient and preferred procedure would have been for the trial court to dismiss Mr. Griffith and proceed to select another juror, the trial judge is vested with broad discretion in ruling on a challenge to show cause and his ruling will not be disturbed on appeal unless the record demonstrates a manifest abuse of discretion. State v. Edwards, 419 So.2d 881 (La.1982). If the trial court could reasonably conclude, from Mr. Griffith's answers on voir dire exam, that he could render an impartial verdict according to the law and evidence, the trial court may deny the challenge for cause. State v. Claiborne, 397 So.2d 486 (La.1981). At the time of defendant's trial, Mr. Griffith had been disassociated from the Cameron Parish Sheriff's Office for over two years. When questioned as to whether his duties as a deputy in the rural parish had ever brought him into contact with defendant he stated that he could not recall ever having arrested defendant, but remembered ticketing him once for driving without a license. In fact, the presentence investigation did not reveal that defendant had ever been arrested by Cameron Parish authorities and defendant offered no proof thereof other than his own allegation. Mr. Griffith stated that he was familiar with defendant but did not dislike him and was not aware of defendant's reputation in the local community. When asked whether he would be fair and impartial, Griffith answered affirmatively.
The record indicates that the trial judge admonished Mr. Griffith on a juror's duty to be unbiased and was satisfied that Griffith could serve impartially. In our opinion there does not appear to be any reason to conclude otherwise. The arrest alleged was minor, Mr. Griffith had been disassociated with the rural law enforcement agency, and defendant did not sufficiently establish any arrest. In view of these facts, we find no abuse of discretion in the denial of the challenge for cause by the trial court. Accordingly, *1345 this assignment does not warrant reversal.
It is contended that the trial court erred in imposing a constitutionally excessive sentence because he failed to comply with the LSA-C.Cr.P. art. 894.1 sentencing guidelines.
Article I, § 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is, of course, reviewable. See: State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warranted a less onerous sentencing alternative. State v. Telsee, 425 So.2d 1251 (La. 1983); Sepulvado, supra. In determining whether a penalty is excessive, we must consider "the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice." State v. Bonanno, 384 So.2d 355, 358 (La. 1980).
Our review is aided by sentencing guidelines codified in LSA-C.Cr.P. art. 894.1. These factors, which must be considered before sentence is imposed, allow the trial court to individualize the penalty, i.e., adapt it to the offender as well as the offense. State v. Lathers, 414 So.2d 678 (La.1982); Sepulvado, supra. Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in absence of a manifest abuse of discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982).
Before imposing sentence, the trial judge discussed a number of factors including: that defendant and his accomplice, Joseph Shea, fired weapons belonging to defendant at a vehicle with complete disregard of the lives of the passengers contained within; although defendant did not actually cause the injury to the innocent teenage boy, who had not been present at the prior altercation with Ms. LaBiche, defendant was certainly the instigator and therefore bore full responsibility; that defendant was very likely to engage in further criminal activity if released and therefore probation was not a viable sentencing alternative.
The trial judge also noted the absence of any mitigating factors that would weigh in defendant's favor. He explained that the victim in this case was an innocent teenage boy who had not been involved in the prior altercation with defendant's girl friend. Defendant's incarceration would not pose a hardship for others, he observed, as defendant was unmarried and without dependents.
We find that this discussion by the trial judge satisfies the requirement of LSA-C.Cr.P. 894.1. The circumstances of this case, defendant's history of criminal activity, and the fact that defendant could have been sentenced to 15 years at hard labor (see LSA-R.S. 14:55) do not lead us to conclude that defendant's sentence was disproportionate to the severity of his crime. These assignments lack merit.
Finally, defendant requests that we reverse his sentence and remand the case to the trial court so that sentence may be imposed in accordance with the sentencing delays outlined in LSA-C.Cr.P. art. 873. Defendant correctly points out that he was sentenced immediately after his motion for a new trial was denied instead of after a twenty-four hour delay mandated by article 873. The minutes do not reflect that this period was affirmatively waived by defendant, but nor do they indicate that defendant raised any objection at the trial court. However, the defect is considered an error patent on the face of the record and thus may be raised for the first time on appeal. State v. Hutto, 349 So.2d 318 (La.1977); State v. White, 404 So.2d 1202 (La.1981).
LSA-C.Cr.P. art. 873 emphatically states:
"If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads *1346 guilty, sentence may be imposed immediately."
Up until recently, the jurisprudence has been uniform in holding that noncompliance with article 873 was reversible error and remand for resentencing was in order. Hutto, supra; State v. Bell, 377 So.2d 275 (La.1979); State v. Sheppard, 371 So.2d 1135 (La.1979). However, the Supreme Court has altered this strict approach somewhat and held that there is no need to equate patent errors with reversible error. State v. White, supra. The defendant in White raised for the first time on appeal an objection to the trial court's imposition of sentence immediately after his motion for a new trial was denied. Unlike our defendant, he did not challenge the sentence itself. In ruling that the trial court's error did not warrant a remand the Supreme Court declared:
"The time lapsed between the defendant's conviction, March 18, 1980, and the date on which sentence was finally imposed, May 30, 1980, was substantial. There are no indications that defendant's sentence was hurriedly imposed without due consideration. Indeed, the minutes of March 18, 1980, reflect that a presentence investigation was ordered. A remand would only serve to lengthen unnecessarily the already substantial delays involved in this case and would in no way further the goal of achieving a fair and just decision on either verdict or sentence. It is illogical for this court to remand for the reimposition of sentence merely because there is an `error' in the minutes' lack of an affirmative waiver of the 24-hour delay. Just as non-prejudicial violations of the accused's statutory rights do not mandate reversal, an error in procedure which does not affect the fundamental fairness of the process does not necessarily require reversal and remand, unless prejudice is shown. C.Cr.P. art. 921. In fact, C.Cr.P. art. 921 mandates that this court not reverse a judgment because of an `error, defect, irregularity or variance which does not affect substantial rights of the accused.'"
Although defendant in this case did indeed challenge his sentence, we are convinced that the White, supra, rationale is still applicable to these facts. Therefore in determining whether a remand for reimposition of sentence is necessary, the relevant inquiry is whether defendant suffered any prejudice to a substantial right. White, supra at 1204. Defendant has not alleged that the trial court's failure to observe the twenty-four hour delay caused him any impairment nor does the record reflect that such is the case. As previously discussed, the trial court's reasons adequately support defendant's sentence. There is no indication that the sentence was hurriedly imposed as over a month transpired between defendant's conviction and sentencing. The trial judge reviewed a pre-sentence report before imposing sentence and concluded there were no mitigating circumstances which would operate to defendant's benefit. The trial court's failure to observe the twenty-four hour sentencing delay appears not to have affected any substantial right of defendant and therefore a remand for resentencing is not warranted.
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.