454 So.2d 421 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Richard S. MONK, Defendant-Appellant.
No. CR83-1054.
Court of Appeal of Louisiana, Third Circuit.
August 10, 1984.
Writ Denied November 9, 1984.
*422 F. Clay Tillman, Jr., Tillman & Fontenot, Leesville, for defendant-appellant.
Edward E. Roberts, Jr., Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOUCET, Judge.
The defendant was convicted of Second Degree Murder and now appeals on the grounds his jury was not impartial and the evidence established his insanity at the time of the crime.
Defendant challenged two prospective jurors for cause, who were subsequently seated nonetheless, after defendant exhausted all peremptory challenges. The first juror challenged, Mrs. Glenda Phillips, knew the victim's husband and worked with him at a local bank. Defense counsel was required to voice his objections to this prospective juror in the presence of all potential jurors.
Juror Warren Steadman had been represented by the District Attorney's law firm and was also first cousin to the D.A. Defense counsel challenged Mr. Steadman for cause contending his close relationship with the D.A. precluded him from being impartial.
The facts leading to defendant's arrest are as follows: On Monday, March 7, 1983, the defendant's car broke down in front of a convenience store on LA Highway 165 in Glenmora, Louisiana. Mr. Monk was seen working on the car that day and the car remained at that location for the rest of the day and Tuesday. On Wednesday, March 9, 1983, the automobile was still parked at the convenience store and that afternoon, the defendant worked on the automobile. While the defendant worked on his automobile, he took a break and went into the convenience store and purchased a six-pack of beer.
The Mr. Quick Insurance Agency was located some 75-100 feet away from the convenience store. It was housed in a small mobile building fronting on LA Highway 165. The victim of this homicide, Mrs. Joyce Prether, had recently purchased the agency where she usually worked in the office alone. On March 9, 1983, Mrs. Prether was working at her office as usual. *423 At approximately 3:00-3:30 P.M. that afternoon, she walked over to the convenience store by the defendant's automobile and purchased a soft drink and some ice and returned to her office. A short while after returning to her office, the defendant appeared. Mr. Monk asked for and received a quote for insurance on his automobile. After receiving the quote, the defendant left the building and returned a short while later inquiring about insurance on unimproved farm land. As Mrs. Prether went into the rear part of the office, apparently to get a calendar for the defendant, the defendant attacked her, stabbing her four times in the chest and once in the neck with a hunting knife. Mr. Monk then left the building on foot carrying the calendar with him.
The defendant was seen leaving the building. He was on foot and began walking to his home. He was picked up by an acquaintance and driven to his mother-in-law's home. His mother-in-law took him to his wife's grandfather's home and from there, his wife's grandfather and he came back to Glenmora and towed his car away from the convenience store. Ironically, sheriff deputies and police stood and watched the automobile being towed away as they investigated the murder, not knowing that the defendant was the suspect they were looking for.
Investigation by the Rapides Parish Sheriff Department and the Glenmora City Police resulted in the arrest of the defendant on a charge of First Degree Murder. After his arrest, the defendant gave a full confession to the investigating officers, wherein he admitted to killing the victim, Joyce Prether.
The defendant was tried on September 12, 1983, for the offense of Second Degree Murder and the jury returned a verdict of guilty as charged and defendant was subsequently sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.
The voir dire of Mr. Steadman reveals that Mr. Steadman is and has been an Allstate Insurance Agent for twenty years; that he and Mr. Roberts, the prosecuting attorney, went to high school together some years ago and that was the extent of their friendship; that Mr. Steadman was represented by a person in the firm with the District Attorney, Ed Ware, some ten or twelve years ago and that such representation dealt with heir property; that he is a first cousin with the District Attorney of Rapides Parish, Ed Ware; that this relationship would not cause him to be uneasy; and, that his relationship with the prosecuting attorney, Mr. Roberts, would not affect him.
Mr. Steadman was challenged for cause by the defense. After the challenge and argument by the defense, the judge questioned Mr. Steadman concerning his relationship with the District Attorney as follows:
"BY THE COURT:
Q. Mr. Steadman, I believe you told Mr. Tillman in testifying that you felt, even though you were a cousin of Edwin Ware, the District Attorney, that that relationship would have no affect on your verdict, is that correct?
BY MR. STEADMAN:
A. Yes, it is.
BY THE COURT:
Q. And you would abide by your oath and disregard that relationship and have no problem doing that?
BY MR. STEADMAN:
A. Yes, sir.
BY THE COURT:
I rule that he's qualified."
Defendant contends that the refusal of the challenge for cause by the trial judge of Mr. Steadman was in error. In addition, defendant asserts that the trial court erred in refusing to allow a challenge for cause of Glenda Phillips, who knew the victim's husband.
Defendant also claims the trial judge erred in requiring him to voice his objections to Mrs. Phillips in the presence of other jurors. The voir dire of Mrs. Phillips is as follows:

*424 "BY MR. ROBERTS:
Q. Can you, if you are chosen as a juror, sit there calmly and dispassionately and listen to the evidence that's presented to you and then deliberate upon the guilt or innocence of this defendant withoutletting prejudice or sympathy either for or against the State or the defendant enter into your mind as to his guilt or innocence?
BY MRS. PHILLIPS:
A. Yes, I can.
* * * * * *
BY MR. TILLMAN:
Q. Is there anything at all that you want to call to our attention about service on the jury?
BY MRS. PHILLIPS:
A. The only thing I do know Jack Prether, her husband.
BY MR. TILLMAN:
Q. How long have you known Mr. Prether?
BY MRS. PHILLIPS:
A. Well, he works at a different branch than me, but you know, we're not close friends or anything. I know him when I see him.
BY MR. TILLMAN:
Q. He works at the bank, the Guaranty Bank?
BY MRS. PHILLIPS:
A. Uh-hum.
BY MR. TILLMAN:
Q. And have you discussed this case with Mr. Preth in any way sense or form?
BY MRS. PHILLIPS:
A. No.
BY MR. TILLMAN:
Q. And I understand that sometimes we... have a way of throwing out questions like, Would you be prejudice?" That ... that's ... I think that's hard to answer but is there anything at all in that relationship that would cause you any concern about serving on the jury that would have to make an ultimate decision about responsibility in Mr. Prether's wife's death?
BY MRS. PHILLIPS:
A. No.
BY MR. TILLMAN:
Q. You feel you can set aside any ... any need to ... to vilifyher or to ... in other words, you think you can set aside all your personal feelings and decide this calmly and dispassionately on the facts?
BY MRS. PHILLIPS:
A. I feel like I can.
* * * * * *
BY MR. TILLMAN:
Q. Do we have your recognition, Mrs. Phillips, that if you are selected ... if you stand and take the oath that these other eleven people have taken that you will fairly and impartially decide this case based only upon the evidence?
BY MRS. PHILLIPS:
A. Yes, sir.
BY MR. TILLMAN:
Q. Can you put aside prejudice that may exist in favor of Mr. Prether or against Mr. Monk in this case?
BY MRS. PHILLIPS:
A. Yes, I could.
BY MR. TILLMAN:
Q. And can you follow the law as the court instructs you is the law of the State of Louisiana?
BY MRS. PHILLIPS:
Yes, I can.
BY MR. TILLMAN: I have no other questions, Your Honor.
BY MR. ROBERTS: State accepts.
BY THE COURT: State accepts.
Defense?
BY MR. TILLMAN: Your Honor, the defendant would challenge Mrs. Phillips for ... for cause.
BY THE COURT: On what theory?
BY MR. TILLMAN: The theory of the cause is that there's a relationship between the juror and the family of the victim that may ... well, it's reasonable to conclude that it might influence the juror in arriving at a verdict. We ... we're put in anonymous position of arguing while we may not necessarily believe that Mrs. Phillips is going to be dishonest. *425 We're put in the position of arguing that there is a relationship that exist between her and the alleged victim's husband by employment that might the chance, however small, of affecting or influencing her in arriving at a verdict. Simple social pressures may be enough to do so and we think that that ... as long as that possibility exist (sic) that Article 797 is directed towards the overabundance of caution in ruling out that possibility of letting that happen in this case.
BY THE COURT: I think the Voir Dire examination speaks clearly for itself on the relationship and how she will act as a juror. I'm satisfied she will be fair and I refuse the challenge."

* * * * * *
The right to a jury trial guarantees to an accused a fair trial by a panel of "impartial and indifferent" jurors. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The constitutional guarantee of an impartial system of jury selection in a State criminal trial rests on the due process clause of the Fourteenth Amendment of the Constitution of the United States of America. Whitus v. Georgia, 385 U.S. 545, 549, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599 (1967). Due process require a tribunal be impartial. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
Impartiality of a juror is not a technical concept as much as it is a state of mind. United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936). A prospective juror's statement that he or she will be fair and impartial is not binding on the trial court. State v. Lewis, 391 So.2d 1156 (La.1980). The defendant is denied due process where circumstances affecting the juror exist which would offer a possible temptation to the average man to forget the burden of proof required to convict the defendant or which might lead him not to hold the balance clear and true between the state and the accused. Phillips v. Smith, 485 F.Supp. 1365 (S.D.N.Y.1980); State v. Monroe, 366 So.2d 1345 (La.1978).
There is a presumption that a juror's answers on voir dire are truthful. Irvin v. Dowd, supra. The trial judge is vested with broad discretion in ruling on a challenge for cause which ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Sylvester, 400 So.2d 640 (La.1981). We cannot conclude the trial judges decision in this regard warrants reversal.
Articles 782-88 of the Louisiana Code of Criminal Procedure relate to the examination of potential jurors for service. No provision in our law either prohibits or requires the sequestration of prospective jurors for an individual voir dire. In general, details as to whether the potential jurors should be called singly or by groups are left to the court's discretion. La.C.Cr.P. 784, comment c; art. 786. Unless there is a significant possibility that individual jurors will be ineligible to serve because of exposure to potentially prejudicial material, there is no requirement that the examination of each juror must be conducted individually. Cf. State v. Goodson, 412 So.2d 1077 (La.1982); State v. Lindsey, 404 So.2d 466 (La.1981). We find no error in the present procedure employed warranting reversal.
The standard of review of sufficiency of the evidence is whether a rational trier of fact, accepting the facts in a light most favorable to the prosecution, could have found the defendant guilty of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Camp, 446 So.2d 1207 (La.1984); State v. Smith, 445 So.2d 521 (La.App. 3rd Cir. 1984).
Under Louisiana law one is presumed sane and the defendant who enters a dual plea of "not guilty and not guilty by reason of insanity" has the burden of proving insanity at the time of the offense by a preponderance of the evidence. La.C.Cr. Pro. art. 652. The State, of course, bears the burden of proving the defendant's guilt *426 beyond a reasonable doubt. Appellant contends that, since the defendant has the burden of proving insanity at the time of the offense, a reviewing court should accept the facts concerning insanity in a light most favorable to the defendant in reviewing the sufficiency of evidence. The defendant's position is not well-founded.
A reviewing court will reverse a trial judge's ruling that defendant is sane only when it finds under facts and circumstances of the case that a rational fact finder, viewing the evidence in light most favorable to prosecution, could not have concluded that defendant failed to prove by a preponderance of the evidence that he was insane at time of the offense. State v. David, 425 So.2d 1241 (La.1983). State v. Roy, 395 So.2d 664 (1981). We have reviewed the record in accordance with the above standard and conclude the evidence is sufficient to sustain a finding that defendant failed to prove his insanity by a preponderance of evidence.
For the reasons assigned above, the defendant's conviction is affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs in the result.