**Gregory ZARTMAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6924.**

Court of Appeals of Alaska.

Aug. 12, 1983.

Robert Blasco, Richard Yospin, Asst. Public Defenders, Ketchikan, and Dana Fabe, Public Defender, Anchorage, for appellant.

Richard W. Maki, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Gregory Zartman was convicted of sale of marijuana. Former AS 17.12.010. He appeals arguing that the trial court erred in failing to excuse for cause eleven jurors who had sat on a similar drug prosecution case the preceding week and heard similar witnesses. Alternatively, he contends the trial court should have allowed him additional peremptory challenges to enable him to ensure that those jurors would not sit

upon his case. We have determined that upon the peculiar facts of this case, the trial court should have sustained challenges for cause against the jurors involved. We therefore reverse and remand for a new trial.

At approximately the same time, Gregory Zartman and Shawn Foster were separately indicted for sale of marijuana to Robert Hernandez, a San Francisco police officer, who, with the consent of his employer, was working as an undercover investigator in Ketchikan in the fall of 1982. Foster and Zartman were separately tried. Robert Blasco served as defense counsel for both. Foster was tried first. The evidence at Foster's trial consisted primarily of the testimony of police officers Robert Hernandez, Ronald Kern and John McIntosh. The same witnesses were scheduled to, and did, testify against Zartman the following week.

At Foster's trial, Officer Hernandez testified as the state's first witness:

District Attorney: Now do you recall whether or not Shawn Foster was ever present during the time that you purchased either marijuana or cocaine from the other person in the Shamrock Bar?

Hernandez: Yes ma'am.

District Attorney: And who was that other person?

Hernandez: The other person was a gentleman by the name of Greg. Greg Zartman, I believe it was.

District Attorney: And what kind of transaction was it?

Hernandez: That particular one was a purchase of marijuana and I believe it was a couple of black pills that were told to me to be speed.

. . . .

This transaction took place out on the sidewalk.

During the state's redirect examination of Officer Hernandez in Foster's trial, Hernandez testified:

District Attorney: Now the buy you made from Zartman two nights before. Where was Shawn Foster during that time?

Hernandez: In the area of the door. He would move from the window to the door area.

District Attorney: And where were you and Mr. Zartman?

Hernandez: Directly outside the front door.

Foster was convicted by a jury. Almost immediately thereafter jury selection in Zartman's trial began. Eleven members of the Foster jury were included as part of the panel from which Zartman's jury would be chosen. Zartman timely challenged those jurors for cause, arguing that the trial court should find "implied bias" by virtue of having heard essentially the same evidence the preceding week from the same witnesses. Zartman pointed out that the jurors had heard testimony that he had sold Officer Hernandez "speed" and that the trial court had given Zartman a protective order preventing his jury from hearing that evidence.

The trial court denied the challenges for cause, reasoning that the overwhelming majority of courts had refused to imply bias from prior jury service on similar cases. See, e.g., Boyd v. State, 528 P.2d 287, 290 (Wyo.1974), cert. denied, 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975). The court held that Zartman would have to show actual bias before a juror would be excused. The court carefully conducted voir dire examination and concluded that each of the jurors impanelled to hear Zartman's case could carefully evaluate the facts against him and reach a decision based only on that evidence, unaffected by any prior jury service. As a result, five members of the Zartman jury had previously served on the Foster jury.

We find it unnecessary in this case to decide whether to follow the majority of courts which reject the doctrine of "implied bias" based only on prior jury service in similar cases with similar witnesses, or the minority of courts which adopt that doctrine. We are satisfied that the peculiar facts of this case bring it so close to the situation governed by Alaska Rule of Crimi-

nal Procedure 24(c)(6) that the trial court should have sustained Zartman's challenges for cause. The rule provides, in relevant part: "The following are grounds for challenges for cause . . . (6) That the person has already sat upon a trial of the same issue."

The Foster jurors were specifically told that Zartman had sold marijuana and "speed" to Officer Hernandez. Less than a week later, five of those same jurors heard essentially the same testimony regarding a marijuana sale in Zartman's case from the same witness. We are particularly concerned that part of the earlier testimony relating to the sale of speed was deemed sufficiently prejudicial that the trial court granted Zartman a protective order, stipulated to by the state, against its admission in his trial.

The state vigorously argues that any error was harmless, noting that the questions relating to Zartman played a very small part in Foster's trial, and suggesting that it is unlikely that the five jurors who sat on both cases would remember the reference to "speed" and thus be affected by it. A number of factors lead us to reject a finding that the error was harmless: Zartman and Foster were arrested as part of a single undercover operation and then indicted and tried at approximately the same time; Zartman's trial followed Foster's by less than a week; Zartman and Foster were both represented by the same attorney; and the thrust of the district attorney's examination of Officer Hernandez in Foster's trial was that Foster was essentially a participant in Zartman's dealings with Hernandez, so that in Foster's presence supported a finding guilt. Under these circumstances, the trial court's failure to excuse the Foster jurors resulted in reversible error in Zartman's trial.

The judgment of the superior court is REVERSED.