625 So.2d 645 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Nathaniel LEE, Defendant-Appellant.
No. CR92-1492.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1993.
*646 J. Phil Haney, New Iberia, for State.
William Robert Collins, New Iberia, for Nathaniel Lee.
Before DOUCET, KNOLL and COOKS, JJ.
DOUCET, Judge.
This is an appeal from a conviction of distribution of cocaine and a sentence of twenty years at hard labor.
In November 1990, the New Iberia Police Department was conducting an undercover narcotics operation aimed at street dealers in the City of New Iberia. Officer Tony Gant from St. Mary Parish was recruited to make narcotic purchases after being introduced to local drug dealers by a confidential informant. Undercover Agent Gant made a purchase of "crack" cocaine from Nathaniel Lee, defendant herein. The defendant was later charged. After his arrest, he admitted selling cocaine. An audiotape recording of the drug sale was admitted into evidence. One surveillance officer confirmed that the defendant, nicknamed "Casper," was in the area on the night of the sale.
The defendant was charged by bill of information with distribution of cocaine, a violation of La.R.S. 40:967. After trial by jury, the defendant was found guilty as charged. The defendant was later sentenced on June 29, 1992, to 240 months, or 20 years, at hard labor; since the defendant was a fifth felony offender, this sentence was the maximum provided under the sentencing guidelines.
The defendant appealed and assigned seven errors, of which two were abandoned on appeal.

ERRORS PATENT
La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court must inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive. Therefore, it is not grounds to reverse the sentence or remand the case for resentencing. La.C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922. As a result, prescription is not yet running. The purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance. Therefore, the district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Cox, 604 So.2d 189 (La.App. 2 Cir.1992); State v. Stephens, 604 So.2d 203 (La.App. 2 Cir.1992).
A review of the record for errors patent also reveals that defendant was sentenced on the same day the trial court denied his motion for a new trial. La.C.Cr.P. art. 873 requires a minimum of 24 hours between the denial of a motion for a new trial and sentencing. The record does not reflect an express waiver of this delay by defendant.
*647 In order for this to constitute reversible error, defendant must be prejudiced by the lack of a sentencing delay. State v. Gaspard, 441 So.2d 812 (La.App. 3 Cir.1983); State v. White, 404 So.2d 1202 (La.1981). Defendant was not prejudiced by any lack of delay in sentencing. A period of over one month passed between the date of his conviction and sentencing. Before sentencing, defendant was given the opportunity to contest the criminal history report presented by the State, and to present any argument or evidence on his behalf. Any error in not delaying sentence did not have an impact on the fairness of the proceedings. As a result, it does not constitute reversible error.

SUFFICIENCY OF THE EVIDENCE
Two of defendant's assignments of error concern the sufficiency of the evidence. The defendant assigned error in the denial of his motion for new trial "in that there was absolute insufficient evidence for the conviction..." and that the defendant should be granted a new trial "simply in the interest of justice, if for no other reason." The defendant claims that under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), the evidence presented was insufficient to sustain defendant's conviction.
When a defendant urges insufficiency of the evidence as a ground for a motion for new trial, the court should apply the "thirteenth juror" standard of review rather than the Jackson standard of review. State v. Landry, 524 So.2d 1261 (La.App. 3 Cir.), writ granted in part on other grounds, 531 So.2d 254 (La.1988), appeal after remand, 546 So.2d 1231 (La.App. 3 Cir.1989). On appeal, the defendant appears to urge simply the Jackson standard of review. At the trial court level, the trial judge denied the defendant's motion on both the "thirteenth juror" standard and a sufficiency of the evidence claim generally raised by a La.C.Cr.P. art. 821 motion for post verdict judgment of acquittal.
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Agent Tony Gant of the St. Mary Parish Sheriff's Office was working with the New Iberia Police Department in November of 1990. Agent Gant testified he bought "crack" cocaine from an individual named "Casper" on November 27, 1990. This drug transaction occurred at approximately 6:00 to 6:30 p.m. near a gas station at the corner of Hopkins and Robinson Streets, in New Iberia. Agent Gant wore a body microphone which transmitted his conversation with the defendant to a recorder. A confidential informant introduced Agent Gant to defendant, who identified himself as "Casper." Agent Gant saw the defendant for five to ten minutes before the buy. Gant asked the defendant what did he have, and the defendant said he had some $40 and $25 rocks. The defendant then removed three rocks from a matchbox and gave them to Gant in return for $25 cash.
Forensic chemist David Epstein testified that the laboratory analysis of the rocks turned in by Agent Gant indicated that they contained cocaine.
The defendant's defense was that of misidentification. At trial, the defendant showed the jury that his left arm was six to eight inches shorter than his right arm. However, Agent Gant never noticed this on the night of the drug sale even though he claimed to have studied the defendant's physical characteristics in order to later identify the defendant. This physical deformity of the defendant was also known to Officer Lennis Landry III, who had known the defendant for many years before this crime. Officer Landry never told Agent Gant about the defendant's arm nor did Officer Landry ask Agent Gant about this noticeable characteristic when they met at the police office after the sale. Neither officer could recall if the defendant was wearing a jacket on the night of the sale in November. However, Officer Landry did drive by the area where the sale occurred and verified that "Casper," the defendant, was present. When Agent Gant returned to the police office, Officer Landry put a photograph on the table and asked Agent Gant, "Do you know that dude?" Agent Gant said that it was Casper, the person from whom he had purchased the crack cocaine. The photograph was of Nathaniel Lee.
*648 The defendant was arrested in July of 1991. After his arrest, he gave a statement to Officer Landry admitting that he had sold cocaine and giving the names of his suppliers. The defendant wanted to assist the police in exchange for reduction or dismissal of criminal charges. This statement was not written nor recorded, but the notes taken by Officer Landry were introduced into evidence.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
The trial judge refused to find the evidence insufficient as set forth in La. C.Cr.P. art. 851(5) motion for new trial, or as set forth in La.C.Cr.P. art. 821 motion for post-verdict judgment of acquittal. A review of the record supports these rulings. Furthermore, when a defendant's motion for new trial is based on the ground of satisfying the demands of justice, denial of the motion presents nothing for appellate review. State v. Bender, 598 So.2d 629 (La.App. 3 Cir), writ denied, 605 So.2d 1125 (La.1992).

JURY SELECTION
The defendant further contends that the trial court abused its discretion in allowing four jurors to serve on the defendant's jury who had served on a criminal jury the day before defendant's trial.
The defendant's trial began with jury selection on Wednesday, May 13, 1992. On the day before, another petit jury selected from the same venire had convicted a different defendant of distribution of narcotics to an undercover agent. The defendant objected to any of the members of the previous jury serving on his jury because the crimes were similar and the same prosecutor was presenting the State's case. This blanket objection, or challenge for cause, was denied by the trial judge who noted that different witnesses would be called by the State, and the crimes had occurred at different times and different locations.
The Court notes for the record that the two cases are in fact very similar, however, I believe that the jurors understand what the issues will be, and I think that they understand. It's not going to be a question of simply rubber stamping a prior verdict whether they'd have to assess credibility of this officer. This officer who will testify is not the same officer. So you don't have the same to come back in and testify, who was the undercover agent at the time and, therefore, respecting defense counsel's order. I feel restrained to deny the motion for cause. For which ruling, Mr. Collins reserves his right to object in the event of a conviction.
Thereafter, the defendant challenged for cause each juror who served on the first jury, and after this challenge was denied, he exercised a peremptory challenge. The defendant exhausted all twelve of his peremptory challenges very early, and could not excuse Regina Migues, Shirley Alvarez, or Judith Jackson from serving on the defendant's jury. In his brief, the defendant also argues that a fourth juror was unsuccessfully challenged, but a review of the transcript shows that Sherena Gondron was accepted by the defendant and unlike the three other contested jurors, the defendant did not challenge her for cause.
Prior service on a petit jury is a ground for exemption from jury service as provided by Louisiana Supreme Court Rule 25, but this exemption does not apply in the present case:
Section 4. The jury commission shall not include in, and shall delete from, the general venire the names of those persons who have served as grand or petit jurors in criminal cases or as trial jurors in civil *649 cases or in a central jury pool during a period of two years immediately preceding their selection for jury service; individual district courts may increase this two year period to a four year period by local rule of court. However, if the name of such a person is included in a general venire, that person may claim an exemption from jury service or may waive the exemption.
In State v. Hines, 311 So.2d 871 (La.1975), the source provision for this exemption was interpreted to require a juror to serve on more than one petit jury during the week he is called for jury service. In Hines, the juror wanted to claim the exemption because he served as a petit juror the day before, but he was not entitled to it because his service was for the one week period of his call and it included possibly serving on one or more juries.
Prior service on a petit jury is also not a per se ground for a challenge for cause except as provided by La.C.Cr.P. art. 797(5):
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.
The defendant argued that prior service in a petit jury was a per se ground for a challenge for cause. Standing alone, prior jury service even in similar cases will not support a challenge for cause per se. State v. Labostrie, 358 So.2d 1243 (La.1978). A defendant must show actual bias on the part of a particular juror to support a challenge for cause. Ordinarily, the trial judge has broad discretion in ruling on the merit of challenges for cause. The trial court's ruling will not be reversed on appeal unless the trial judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused as revealed on full review of the voir dire examination.
A review of the voir dire of the three challenged jurors reveals no actual bias. Therefore, there was no abuse of the trial court's discretion.

AUDIOTAPE EVIDENCE
By his third assignment of error the defendant claims the trial court erred in admitting into evidence an audiotape of the defendant's sale of "crack" cocaine to Agent Gant because this audiotape was unintelligible and therefore unduly prejudiced the defendant. Defendant argues it is inadmissible because it has absolutely no probative value, and any weight it had was far outweighed by its prejudice to defendant. No authority is cited by the defendant in his appellate brief. The State simply argues that if the audiotape was truly unintelligible, then it could have no prejudicial effect, and if the audiotape was intelligible, then its probative value outweighed any prejudice to defendant.
Lt. Kerry LeBlanc testified that, in addition to the background noises, one could hear defendant telling Agent Gant he had some $40 and $25 rocks of "crack" cocaine. Counsel for defendant had previously objected to the introduction of the audiotape and the trial judge recessed trial in order to listen to it and rule on defendant's objection:
Having listened to the tape, the Court will overrule defense counsel's objection to the tape. It is, as defense counsel points out, very difficult to understand. Many parts of it are in fact unintelligible. However, it is a tape that was made of the transaction. It's been identified by the, by Detective LeBlanc. And the Court is going to allow the prosecution to play it for whatever weight the jury wants to give it. I believe that if the prosecution wants to offer it, that the jury can assess its weight as effectively as it possibly can.
The audiotape of the alleged transaction is relevant evidence which tends to make the existence of a fact at issue more probable or less probable. La.C.E. art. 401. Relevant evidence is generally admissible. La.C.E. art. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La.C.E. art. 403.
Counsel for the defendant appears to confuse weight of the evidence with relevancy of the evidence. The comments following La. C.E. art. 402 note that to be admissible under the Code of Evidence, relevant evidence *650 need not have any pre-determined minimum weight. La.C.E. art. 402, comment (c). Article 402 is derived from former La.R.S. 15:441 (repealed), and in State v. O'Quinn, 342 So.2d 202 (La.1977), the court noted that the evidence offered does not need to have strong, full, representative value, or to produce persuasion by its role and intrinsic form, but it is sufficient if it is worth consideration by the jury. Previously, in State v. LaCoste, 256 La. 697, 237 So.2d 871 (1970), a surveillance videotape of a bank robbery was found admissible, and the Supreme Court ruled it was for the jury to decide whether or not it bore upon the guilt or innocence of the accused.
These same principles apply in the present case; the audiotape was found admissible by the trial judge and it was then up to the jury to determine what weight, if any, it would give the recording. The defendant introduced no evidence to support his claim of prejudice. Therefore, the defendant has failed to establish reversible error in the trial court's ruling. La.C.E. art. 103 and La. C.Cr.P. art. 921.

EXCESSIVE SENTENCE
The defendant also appeals the imposition of an excessive sentence. A review of the record reveals that no motion to reconsider sentence was filed by the defendant. A further request to the district clerk of court revealed no such motion has been filed. La. C.Cr.P. art. 881.1(D) provides that the failure to timely file a motion to reconsider sentence precludes appellate review of any claim concerning excessiveness of sentence. See State v. Gachot, 609 So.2d 269 (La.App. 3 Cir. 1992). Therefore, this assignment of error will not be considered.
Accordingly, the defendant's conviction and sentence are affirmed. This court orders the district court to comply with La. C.Cr.P. art. 930.8(C) by informing defendant in writing of the provisions of La.C.Cr.P. art. 930.8 within ten days of the rendition of this opinion and file written proof that the defendant received such notice in the record of the proceedings.
AFFIRMED WITH INSTRUCTIONS.
COOKS, J., dissents and assigns written reasons.
COOKS, Judge dissenting.
Defendant complains his constitutional right to a fair trial by an impartial jury was violated because several prospective jurors called at his trial also served the day before as jurors in an "almost identical" case involving the sale of rock cocaine in which the same Assistant District Attorney participated as prosecutor. Although trial judges are vested with wide discretion in determining a juror's qualification to serve, the "immediacy of the jurors' service" and certain references made by the Assistant District Attorney during voir dire examination convince me that the trial judge should have excused the challenged jurors for cause.
On Monday, May 11, 1992, a general jury venire was selected from which several jurors were expected to be called for petit jury duty to try criminal cases scheduled that week. The record of the voir dire proceeding reveals four members accepted as jurors at defendant's trial also served as petit panel members on another drug related case in which a guilty verdict was rendered the day before. Instead of selecting jurors to serve at defendant's trial from the general venire remaining after the first case was tried, all the members who served on Monday's petit jury were returned to the jury pool. Eight (8) of the first fourteen (14) prospective jurors called at defendant's trial served at the earlier drug trial. Defendant quickly exhausted his peremptory challenges excusing these prospective jurors after the trial judge rejected his request to release them for cause. As the jury selection process continued, four more prospective jurors called to complete defendant's petit jury also served at the prior trial. In brief the State urges defendant's complaint regarding the service of Sherena Gondron should not be heard because the record reflects she was accepted by the State and the defense. Although this appears true from reading the record, at the time of Gondron's acceptance the defense had exhausted all the peremptory challenges allotted to it. The record reflects when the first panel of prospective jurors were "offered" for service, defense counsel made a *651 blanket objection to any members of the previous jury serving at his trial because the crimes were similar and the same prosecutor represented the State. I do not believe defendant's failure to specifically challenge Gondron for cause should prevent him on appeal from fully urging his original blanket challenge for cause. Having exhausted his allotted strikes, defendant was unable to excuse the four jurors and the trial judge expressed, earlier, he would not remove these jurors for cause.
The record does not disclose whether the week's jury pool was unusually small which might explain as "happenstance" the successive selection of such a high number of jurors. It does reflect, however, that the Assistant District Attorney during voir dire constantly reminded the jurors of their prior service, often referring to certain "understandings" shared between them apparently formed during discussions at the first trial and his knowledge of "how a lot of [them felt]:"
(1) "As I understand it from what you've said before ..."
(2) "I'm going to be a little bit shorter today because I've talked to a number of you before. So I won't go over most of those questions...."
(3) "Everybody pretty much heard all the elements of the crime that we discussed in yesterday's case, and basically it's the same elements in this particular crime with a different date, and the fact that there's only one count here and not two counts. As I indicated yesterday, we have to prove that on or about November the 27th of 1990, something occurred, element No. 1. No. 2, that it occurred in Iberia Parish. No. 3, that defendant knowingly or intentionally did some act. As you heard with my example has something put in their coat pocket and they don't know anything about it, and the police happens to stop them and find something in their pocket, then we would not be able to meet our burden of sharing that the defendant knowingly and intentionally did something. That is, knowingly and intentionally possessed something. So we have to prove to your satisfaction beyond all reasonable doubt that the defendant knowingly and intentionally did something ..."
(4) "And you probably heard also yesterday, that as I read the elements, it doesn't require that I prove that Mr. Lee distributed any specific amount of cocaine ..."
(5) "And, of course, the other thing I discussed yesterday was distribution, a lot of people have in their mind when they're talking about distributing drugs they feel like there must be a sale, that you get arrested for selling drugs...."
(6) "In this case, as in yesterday's case, there is the use of a confidential informant in some role in this particular case. And we discussed that yesterday at pretty much at length; and I pretty much know how a lot of you feel, but I need to go over it with the people that I haven't talked about ..." [Emphasis Added]
(7) "The fact that I don't intend to call this witness, or this person, is that going to create any problem in your mind at all?
. . . . .
Ms. Louviere, I think I went over that with you yesterday. And Ms. Suard, I think I went over that with you, and Ms. Cuccio.'
. . . . .
And Ms. Ardizone, I've gone over that with you. Ms. Horn, Mr. Bourque, I think I went over that with you yesterday.
. . . . .
And Ms. Strickney, I went over that with you. Ms. Hauser, Mr. Romero, I think I went over it with you, and Ms. Smith ..."
(8) Q. "Ms. Louviere, anything we talked about yesterday that you've thought about that you've changed your mind about, or are your answers pretty much the same as they were yesterday on those questions?
A. It was Monday?
Q. Monday? It was Monday, okayI lost track of time.

*652 A. Yes, sir. They're still the same.
. . . . .
Q. And I think I know your answers, Ms. Suard and Ms. Cuccio ..."
(9) Q. "Ms. Hauser, how do you feel about serving on this jury?
A. I feel
Q. Reasonably comfortable?
A. Yes.
Q. I think this is pretty much the same type of case. Would the fact that what ever your verdict was, came out that way, prejudice you in any way against Mr. Lee?
A. I don't think so.

Q. It would not?
A. No ..." [Emphasis Added]
(10) "Ms. Suard, you don't feel that as a result of listening to yesterday's case and coming to whatever conclusion you came to, that you might be prejudice toward this case and coming to the same conclusions?
A. No, I don't think so.

Q. You could look at it independently?
A. I'd have to listen to it.

Q. You would try?
A. I would try my best." [Emphasis Added]

(11) Q. "[Mr. Latiolas] [a]nything happen between, I think it was Monday. I talked to you, or was it yesterday?
A. Monday.
Q. Monday. Between now and then that I should know about, any changes in your answers or anything like that?"
(12) Q. "Ms. Migues, let me ask you, if you have to serve on this jury for a second time, is that going to create any undue hardship on you?
A. No, only if you would have me here the day before my wedding.
Q. Well, let me assure you that we will not be here. If we are, there's something wrong. I would anticipate this case lasting probably the rest of the day and probably tomorrow morning. I would anticipate us being through sometime tomorrow.
A. Well, that wouldn't be any problem.
Q. And we talked about, yesterday, looking for this fair and impartial juror, and of course, now you've been through the entire system, jury selection and through the trial and deliberation, do you still feel like you fit the bill?
A. Yes ..." [Emphasis Added]
(13) Q. "Ms. Jackson, you have any problem with the fact that you've served on the jury yesterday and you might be selected today? Does that create any particular problems for you?"
A. No, sir, because this is a different case and a different defendant. He's innocent until
Q. I just wanted to make sure we didn't wear out our welcome with you. I mean, it was a long couple of days and we worked pretty hard and we're here back at it again, and I appreciate you being here and letting us question you again, but that's not going to create a problem for you?
A. No, sir.
Q. And just like you did yesterday, you could be fair and impartial to this defendant just like you were to the other defendant?
A. Yes, sir."
(14) Q. "Ms. Gondron, we spoke yesterday, I just have a few questions. Do you have any problem with that one on one situation we talked about?
A. No, sir."
(15) "I think I spoke with all three of you yesterday, so I pretty much have all the background on you. Any of you have any problem with the fact that it's a one on one drug case as far as actual transaction that took place. Does that bother anybody?"
In certain areas of Louisiana the available jury pool may be so small that successive jury service inevitably may result. Standing alone, prior jury service even in similar cases will not support a challenge for cause per se. United States v. Riebschlaeger, 528 F.2d 1031, 1032-33 (5th Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976);
*653 State v. LaBostrie, 358 So.2d 1243 (La.1978). Generally, as noted by the majority, a defendant must show actual bias on the part of a particular juror to support a challenge for cause. Ordinarily, the trial judge has broad discretion in ruling on the merit of challenges for cause. The trial court's ruling will not be reversed on appeal unless the trial judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused as revealed on full review of the voir dire examination. However, the majority would have us search for proof of "actual bias" in every case before considering whether the trial judge abused his discretion in denying a challenge for cause. This inflexible interpretation of our jurisprudence is not in accord with prior case holdings and threatens the constitutional right of all who stand before the court, charged with a felony, to a fair trial by an impartial jury.
There are certain instances which requires us to depart from the usual standard requiring "actual" proof of bias. In State v. Freeze, 438 So.2d 1340 (La.App. 3rd Cir.1983), writ denied, 466 So.2d 465 (La.1985), this court said:
"Both our federal and state constitutions guarantee the accused in a criminal proceeding the right to a trial by an impartial jury. 6th Amendment, U.S. Constitution; La. Constitution, Art. 1, § 16. Additionally, La.C.Cr.P. art. 797 protects the right to an impartial jury.
* * * * * *
implicit in the right to a jury trial is the guarantee that an accused will receive an impartial jury. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The Constitutional standard of fairness requires that a defendant have a panel of impartial indifferent jurors. Murphy vs. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Irvin v. Dowd, supra. As was stated in Hayes v. Missouri, 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578, `it is to be remembered that such impartiality requires not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the State the scales are to be evenly held.'"
On these occasions the constitutional standard of fairness, tailored to assure selection of an impartial jury, may requires us to determine whether implied bias exist from the circumstances surrounding the jury's selection. In such rare cases, "the test, in essence, states that the defendant is denied due process of law where circumstances affecting the juror exist which would offer a possible temptation to the average man to forget the burden of proof required to convict the defendant or which might lead him not to hold the balance nice, clean and true between the state, and the accused." State v. Lewis, 391 So.2d 1156 (La.1980). The "average person" standard does not require proof that the particular potential juror would be biased. State v. Lewis, supra., Phillips v. Smith, 485 F.Supp. 1365 (1980).[1] However, to complain of a ruling refusing to grant a challenge for cause, defendant must exhaust the peremptory strikes allotted to him before completion of the panel. State v. Ballard, 337 So.2d 481 (La.1976). This statutory requirement may precariously prevent a defendant from genuinely exercising his peremptory challenges in order to preserve the right to appellate review of the trial court's refusal to excuse a juror who properly should have been removed for cause. United States v. Mobley, 656 F.2d 988 (1981).
While the federal constitution does not guarantee a right to peremptory challenges, the practice of allotting strikes equally to the state and defendant has been traditionally accepted "as a means of assuring the selection of a qualified and unbiased jury." Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Swain v. Alabama 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Stilson v. United States, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919). Obviously, recognizing the historical use of peremptory challenges and their relative importance to *654 the selection of an impartial jury, the Louisiana Constitution does confer a right "to challenge jurors peremptorily" and further provides "the number of challenges shall be fixed by law." Louisiana Constitution Article 1 § 17; LSA-C.Cr.P. 799. Corollary to this right is the requirement that not only must the number of peremptory strikes be equal between the state and defendant but they also must be equivalent in value. The random selection of a jury venirewhich is constitutionally and statutorily mandatednecessarily envisions that once the jurors are called they will appear before the court for examination by the state and defense, each without unfair advantage over the other, in predicting the predisposition of a particular venire member. As stated in United States v. Mutchler, 559 F.2d 955 (5th Cir.1977) allowing "peremptory challenges represent an assumption in our adversary system that a party and his advocate can frequently discern bias in a prospective juror that cannot be extracted from his mouth in so many words." (Emphasis Added). The danger of permitting "successive" jury service in similar cases ending with guilty verdicts is that such practice may impair, though innocently, the defense's ability to equally judge the impartiality of jurors from their fresh and untrained responses to questions or to make like assumptions from their "facial or other gestures" which may become more relaxed and translatively unreliable in "searching" for unconscious or hidden bias. Thus, the practice of selecting jurors from a single venire to successively serve in similar cases may prevent the defendant from meaningfully exercising his peremptory challenges "by depriving him of necessary information on which to base them." United States v. Franklin, 700 F.2d 1241 (10th Cir., 1983); United States v. Mutchler, supra. Magnified in the present case, this danger is evidenced on cursory review of the voir dire examination. Repeatedly, the Assistant District Attorney alluded to certain jurors' responses at the prior trial or he openly expressed knowing their answers or feelings without questioning them. Defendant and his counsel were not present at the voir dire examination conducted on Monday. Without knowledge of these jurors' prior answers or other expressions, he was deprived of an opportunity to fully participate in the voir dire process and to illicit further information from these jurors which may have been material in intelligently exercising his allotted peremptory challenges.
Further, in United States v. Mutchler, supra, and United States v. Jefferson, 569 F.2d 260 (5th Cir.1978) the United States Fifth Circuit Court of Appeal inferred bias as a matter of law when jurors were allowed to perform interim service while awaiting defendants' trial on similar cases holding such jurors should be excused for cause. In result, the selection process in this case suffered from the same ills recognized in Mutchler and Jefferson, supra. Twelve of the prospective jurors selected also served on Monday's petit jury which tried to completion a similar drug case involving the same assistant district attorney. The fact that these jurors were returned to the general pool and then reselected provides no real distinction from selecting them on Monday and allowing them to try several similar cases in succession or in the interim while awaiting defendant's trial.
In addition to infringing on defendant's right (constitutionally protected in Louisiana) to make an informed peremptory challenges at voir dire, such jury service is uniquely pernicious because it is "more proximate in time and so creates a heightened danger of prejudice, which is especially great when the offenses are similar or the witnesses the same ..." United States v. Jefferson, supra at 262. Therefore, I believe defendant's constitutional right to the selection of a fair and impartial jury was violated as well. In State v. Lewis, supra, the Louisiana Supreme Court favorably quoting from United States v. Wood, 299 U.S. 123, 146, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936), noted:
"Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula."
Mere reliance on a prospective juror's assertion that he or she will be fair and impartial despite such service is not binding on the court. State v. Lewis, supra; State v. Freeze, supra; State v. Sylvester, 400 So.2d 640 (La.1981). This court said "if the revealed *655 details of the relationship are such that bias or prejudice may be reasonably implied, a juror may be properly refused for cause." State v. Freeze, supra; State v. Lewis, supra; State v. Monroe, 366 So.2d 1345 (La.1978). The "average person" standard adopted in this State and applied under certain limited circumstances originated from judicial recognition that "[b]ias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence, and it might exist in the mind of one (on account of his relations with one of the parties) who was quite positive that he had no bias, and said that he was perfectly able to decide the question wholly uninfluenced by anything but the evidence." Crawford v. United States, 212 U.S. 183, 196, 29 S.Ct. 260, 265, 53 L.Ed. 465 (1909). Basic human psychology teaches, subconsciously, a juror may tend to favor the prosecutor's position simply because he has developed, through the course of his prior service or contact, some affinity with him or the juror may have stored in his memory "bits and pieces" of information which may cause him to view the defendant as fitting a certain profile or to convict by associating the evidence presented in the prior trial with that introduced in defendant's trial without fully reviewing the case as a whole and the evidence specifically pointing to the particular defendant's guilt. Where the probability of bias is extremely high and the voir dire record (for whatever reason) does not contain enough evidence to dismiss its existence, we have found implied bias as a matter of law. State v. Lewis, supra; State v. Sylvester, supra.[2] Here, the trial judge summarily dismissed defendant's challenges for cause without independently addressing any additional questions to the jurors designed to flush out whether their prior service in truth may have affected their ability, consciously or otherwise, to serve in defendant's case.
As mentioned, twelve of the prospective jurors selected in this case served on a jury panel which tried a similar case resulting in a guilty verdict the day before defendant's trial started. Examination of the voir dire reveals the Assistant District Attorney made numerous references to the jurors' prior service and the similarity between the two cases. Specifically, on at least fifteen (15) occasions, he insisted on directing these jurors' attention during voir dire examination to similarities between the cases by framing his questions to deposit in their minds his belief that the cases involved the same elements, the same mode of distribution, the same use of an undercover agent; and even further suggesting the time required to try the case was the same unless "something [went] wrong." The majority cannot say, honestly, the seed of jury bias was not planted as a consequence of these constant references and the large number of jurors successively serving at defendant's trial. Between the defendant and the State "the scales are to be evenly held." Hayes v. Missouri, 120 U.S. 68, 70, 7 S.Ct. 350, 30 L.Ed. 578 (1887); State v. Freeze, supra. Where, as evidenced in this case, the balance is not kept "nice, clean, and true between the State, and the accused," jury bias may flourish.
I would reverse defendant's conviction and remand the case for new trial.
NOTES
[1] La.Code of Criminal Procedure Article 797 also provides a defendant may challenge a juror for cause on the ground that the relationship between the juror and the district attorney is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict or the juror is not impartial, whatever the cause of his partiality.
[2] Immediately following the defense's motion, the trial judge without further ado denied it acknowledging while the two cases were very similar, still he believed the jurors understood the issues and they would not "rubber stamp" the prior verdict. He also noted the undercover agent subpoenaed to testify in defendant's case was not the same agent who testified in the prior case. A different undercover agent or the jury's awareness of the issue is simply not sufficient to support a finding that the potential for jury bias did not exist in this case.