637 So.2d 102 (1994)
STATE of Louisiana
v.
Nathaniel LEE.
No. 93-KO-2810.
Supreme Court of Louisiana.
May 23, 1994.
*103 William R. Collins, New Iberia, for applicant.
Nathaniel Lee, pro se.
Richard P. Ieyoub, Atty. Gen., New Orleans, Bernard E. Boudreaux, Jr., Dist. Atty., John P. Haney, Ralph K. Lee, Glenda Huddleston, New Iberia, for respondent.
KIMBALL, Justice.[*]
On the night of November 27, 1990, Officer Troy Gant of the St. Mary Sheriff's Department, Narcotics Division, was working "on loan" as an undercover agent for the New Iberia Police Department, making narcotics purchases from street level dealers. While wearing a body transmitter linked to a recording device in his vehicle, Officer Gant was introduced to a man named "Casper" by a New Iberia Police Department confidential informant. Officer Gant made a purchase of "crack" cocaine from "Casper." After purchasing the drugs and leaving the area, Officer Gant contacted the New Iberia Police *104 Department officers with whom he was working and informed them he had just made drug a purchase from a man named "Casper." Officer Gant also gave the New Iberia Police Department officers a physical description of "Casper." Officer Gant then returned to the area and made another purchase from a different drug dealer. In the meantime, Officer Landry of the New Iberia Police Department, recognizing the name of the seller, drove through the area where the sale had taken place and confirmed that the person he knew as "Casper," Nathaniel Lee, was in the same area as the reported drug transaction. Later that night, when Officer Gant returned to the New Iberia Police Department, Officer Landry placed a photograph of Nathaniel Lee, defendant herein, in front of Officer Gant and asked "[d]o you know that dude?" Officer Gant informed Officer Landry that the photograph was that of "Casper," the dealer from whom he had purchased cocaine earlier in the evening. On April 12, 1991, Nathaniel Lee was arrested for distribution of cocaine.
Defendant was charged by bill of information with distribution of cocaine, a violation of La.R.S. 40:967. After trial by jury, defendant was found guilty as charged. Because defendant was a fifth felony offender, he was subsequently sentenced to the maximum time provided for in the sentencing guidelines, 240 months, or 20 years, at hard labor. Defendant's conviction and sentence were affirmed by the third circuit court of appeal.[1] We granted writs[2] to consider defendant's assignment of error that his right to trial by a fair and impartial jury was violated when the trial court refused to grant defendant's challenges for cause of certain prospective jurors, and now affirm.
Defendant argues that his constitutional right to a fair trial by an impartial jury was violated when the trial court refused to grant defense counsel's challenges for cause of prospective jurors who had, on the day before defendant's trial, served as jurors in a similar type of case involving a different defendant which had also been prosecuted by the same Assistant District Attorney. Defendant alleges that as a result of the trial court's rulings, he was forced to unnecessarily use many of his peremptory challenges to remove these prospective jurors and, further, that after he had exhausted his allotted number of peremptory challenges, three[3] of the jurors who had served on the previous day's jury were seated on his jury. Defendant additionally argues that the Assistant District Attorney's questioning during voir dire of the members of the jury venire demonstrated the prosecutor had reached certain "understandings" with those jurors who had served on the prior jury during the voir dire for that case, "understandings" to which defendant herein was not privy.
On Monday, May 11, 1992, a petit jury venire was selected from which jurors would be called for petit jury duty for criminal trials scheduled to begin during that week. From that venire, a twelve person jury, along with two alternates, was selected to serve in the trial of another, unrelated narcotics sale case against a different defendant. That jury returned a guilty verdict against the defendant involved therein. After trial, the names of the members of that jury were returned to the petit jury venire for possible service again as jurors.[4]
*105 On May 13, 1992, prospective jurors were called from the same petit jury venire, which now included the names of those jurors who had served on the petit jury on the previous day, for potential service on the jury for the trial of Nathaniel Lee. Ten of the first twenty-five persons called had served on the jury in the prior trial, either as jurors or, in one instance, as an alternate. After the first panel of potential jurors had been called for voir dire, the trial judge denied defense counsel's blanket challenge for cause of all members of the jury venire who had served on the prior jury.[5] Defendant then used nine of his allotted twelve peremptory strikes to remove those jurors who had served on the prior jury.[6] Defendant exhausted his remaining peremptory challenges on members of the jury venire who had no prior jury service. The remainder of the jury was then selected, with three of the jurors seated having served on the jury which had heard the other, unrelated case.[7] Because defendant exhausted all of his peremptory challenges before completion of the jury panel, he is entitled to complain on appeal of the trial court's rulings refusing to maintain his challenges for cause. State v. Robertson, 630 So.2d 1278, 1280-81. (La.1994).
During voir dire, the prosecutor made reference to the voir dire questions he had asked the day before of those jurors who had served on the prior jury, and to the answers which they had given him at that voir dire. Defendant argues these references to questions and answers to which neither defendant nor defense counsel was privy, in combination with the potential jurors' prior service, give rise to an "implied bias" on the part of those jurors who had served on the prior jury. As such, defendant argues the trial court abused its discretion in refusing to grant his challenges for cause of those jurors, as they were "not impartial," as required by La.C.Cr.P. art. 797(2).[8] Specifically, defendant objects to the following statements made by the prosecutor, and the following exchanges which took place between the prosecutor and those jurors who had served on the previous day's jury:
(1) "As I understand it from what you've said before ..."
(2) "I'm going to be a little bit shorter today because I've talked to a number of you before. So I won't go over most of those questions...."
(3) "Everybody pretty much heard all the elements of the crime that we discussed in yesterday's case, and basically it's the *106 same elements in this particular crime with a different date, and the fact that there's only one count here and not two counts. As I indicated yesterday, we have to prove that on or about November the 27th of 1990, something occurred, element No. 1. No. 2, that it occurred in Iberia Parish. No. 3, that defendant knowingly or intentionally did some act. As you heard with my example has something put in their coat pocket and they don't know anything about it, and the police happens to stop them and find something in their pocket, then we would not be able to meet our burden of sharing that the defendant knowingly and intentionally did something. That is, knowingly and intentionally possessed something. So we have to prove to your satisfaction beyond all reasonable doubt that the defendant knowingly and intentionally did something ..."
(4) "And you probably heard also yesterday, that as I read the elements, it doesn't require that I prove that Mr. Lee distributed any specific amount of cocaine ..."
(5) "And, of course, the other thing I discussed yesterday was distribution, a lot of people have in their mind when they're talking about distributing drugs they feel there must be a sale, that you get arrested for selling drugs ..."
(6) "In this case, as in yesterday's case, there is the use of a confidential informant in some role in this particular case. And we discussed that yesterday at pretty much at length; and I pretty much know how a lot of you feel, but I need to go over it with the people that I haven't talked about ..."
(7) "The fact that I don't intend to call this witness, or this person, is that going to create any problem in your mind at all?
* * * * * *
Ms. Louviere, I think I went over that with you yesterday. And Ms. Suard, I think I went over that with you, and Ms. Cuccio.
* * * * * *
And Ms. Ardizone, I've gone over that with you. Ms. Horn, Mr. Bourque, I think I went over that with you yesterday.
* * * * * *
And Ms. Strickney, I went over that with you. Ms. Hauser, Mr. Romero, I think I went over it with you, and Ms. Smith ..."
(8) Q. "Ms. Louviere, anything we talked about yesterday that you've thought about that you've changed your mind about, or are your answers pretty much the same as they were yesterday on those questions?
A. It was Monday?
Q. Monday? It was Monday, okayI lost track of time.
A. Yes, sir. They're still the same.
* * * * * *
Q. And I think I know your answers, Ms. Suard and Ms. Cuccio ..."
(9) Q. "[Mr. Latiolais] [a]nything happen between, I think it was Monday. I talked to you, or was it yesterday?
A. Monday.
Q. Monday. Between now and then that I should know about, any changes in your answers or anything like that?
A. None whatsoever."
(10) Q. "Ms. Migues, let me ask you, if you have to serve on this jury for a second time, is that going to create any undue hardship on you?
A. No, only if you would have me here the day before my wedding.
Q. Well, let me assure you that we will not be here. If we are, there's something wrong. I would anticipate this case lasting probably the rest of the day and probably tomorrow morning. I would anticipate us being through sometime tomorrow.
A. Well, that wouldn't be any problem.
Q. And we talked about, yesterday, looking for this fair and impartial juror, and of course, now you've been through the entire system, jury selection and through the trial and deliberation, do you still feel like you fit the bill?
A. Yes ..."
(11) Q. "Ms. Jackson, you have any problem with the fact that you've served on the jury yesterday and you might be selected today? Does that create any particular problems for you?

*107 A. No, sir, because this is a different case and a different defendant. He's innocent until
Q. I just wanted to make sure we didn't wear out our welcome with you. I mean, it was a long couple of days and we worked pretty hard and we're back at it again, and I appreciate you being here and letting us question you again, but that's not going to create a problem for you?
A. No, sir.
Q. And just like you did yesterday, you could be fair and impartial to this defendant just like you were to the other defendant?
A. Yes, sir."
(12) Q. "Ms. Gondron, we spoke yesterday, I just have a few questions. Do you have any problem with that one on one situation we talked about?
A. No, sir."
(13) Q. "I think I spoke with all three of you yesterday, so I pretty much have all the background on you. Any of you have any problem with the fact that it's a one on one drug case as far as the actual transaction that took place. Does that bother anybody?"[9]
When he uses a peremptory challenge after a challenge for cause has been denied, the defendant, in order to obtain a reversal of his conviction, must show: (1) erroneous denial of the challenge(s) for cause; and (2) use of all peremptory challenges prior to completion of the jury panel. Robertson, 630 So.2d 1278, 1280-81. In the instant case, the record clearly shows that defendant, after denial of his challenges for cause of the jurors who had sat on the previous jury, exhausted his peremptory challenges before completion of the jury panel. Therefore, all that remains to be determined on this assignment of error is whether defendant has shown the trial court erroneously denied his challenges for cause of those jurors who had served on the previous day's jury.
It is well settled that prior jury service in a similar case, standing alone, is not enough to sustain a challenge for cause. State v. LaBostrie, 358 So.2d 1243 (La.1978); see also United States v. Riebschlaeger, 528 F.2d 1031, 1032-33 (5th Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976). In LaBostrie, supra, this Court affirmed the denial of a similar challenge for cause where, not only had the challenged juror sat on a similar case on the previous day, but, unlike this case, the undercover agent testifying in both cases was the same.[10]
*108 Regarding the references made by the prosecutor, excerpted, supra, about which defendant complains, a trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on review unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Bourque, 622 So.2d 198, 226 (La.1993); State v. Jones, 474 So.2d 919, 926 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). In reference to the trial judge's great discretion in this area, this Court, in State v. Passman, 345 So.2d 874, 880 (La.1977), stated:
We have repeatedly held that the trial judge is vested with broad discretion in ruling on challenges for cause, and only where it appears, upon review of the voir dire examination as a whole, that the judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will this Court reverse the ruling of the trial judge....
This is necessarily so because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning by the parties' attorneys. Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record. Furthermore, to the extent he or she believes it is necessary or desirable to do so, the trial judge has the benefit of the ability to directly participate in the examination of the members of the jury venire. As such, we are reluctant to reverse a ruling of the trial judge on a challenge for cause where it does not appear from a review of the record as a whole that the trial judge has somehow abused his discretion.
Though many of the remarks or references excerpted above could be viewed as questionable standing alone and out of context, when the voir dire is properly reviewed as a whole, we are satisfied that no evidence of partiality on the part of any of the jurors with prior jury service exists. To the contrary, a review of the voir dire as a whole shows that the prosecutor was simply attempting to save time by avoiding repetitious questioning of those panel members with whom he was already familiar. To the extent defense counsel and defendant were not "privy" to the questions and answers which had occurred in the previous voir dire, defense counsel was not prohibited from questioning those panelists about any of the referenced questions and answers. Review of the entire voir dire shows that there was no objection at any time to the prosecutor's references, nor was any questioning of the panelists conducted regarding the nature or content of the referenced questions and answers. Indeed, defense counsel admitted at oral argument before this Court that other than remarking on and objecting to the panelists' prior jury service on a similar case,[11] he was not concerned at that time *109 about the prosecutor's method or line of questioning the panelists, or the answers which had been given by the panelists at the prior voir dire.
This is not to say, however, that defense counsel did not engage in a thorough questioning of the panelists, including those whom he challenged for cause because of their prior service, as to their ability to render a fair and impartial verdict in the case. Review of the record clearly shows defendant's attorney did in fact avail himself of his opportunities to question the panelists extensively on a wide range of subjects, including "reasonable doubt," the presumption of innocence enjoyed by the defendant, credibility determinations to be made where a "one on one drug transaction" is alleged, the use by police of confidential informants, lesser included charges and, most importantly, the panelists' individual abilities to remain impartial and render a fair verdict in accordance with the instructions given by the judge on the evidence presented. Review of the record further shows that both the trial judge and the prosecutor also questioned the panelists about their respective abilities to remain impartial and render a fair verdict only on the basis of the judge's instructions as to the law and the evidence presented to them in court. At no point in the record is there any indication on the part of any of the challenged jurors of partiality, bias, or inability to follow the judge's instructions and render a fair verdict on the basis of the evidence presented in court.
In sum, after a thorough review of the voir dire as a whole, we find no abuse of discretion on the part of the trial court in refusing to grant defendant's challenges for cause. This assignment of error has no merit.[12]

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
CALOGERO, C.J., dissents and will assign reasons.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3 of the Rules of the Supreme Court of Louisiana, Watson, J., was not on the panel which heard and decided this case. See State v. Barras, 615 So.2d 285, 286 n. 1 (La.1993).

Judge Charles A. Marvin, Chief Judge, Court of Appeal, Second Circuit, sitting in place of Justice James L. Dennis.
[1] State v. Lee, 625 So.2d 645 (La.App. 3rd Cir. 1993).
[2] State v. Lee, 631 So.2d 1151 (La.1994).
[3] Defendant argues that four jurors with service on the preceding day's jury were seated on his jury. However, only three of the complained of jurors on Lee's jury actually participated as jurors on the preceding day's jury, with the other complained of juror from Lee's trial participating in the preceding day's trial as an alternate juror. We note this distinction because, when taken to its logical conclusion, defendant's argument for inclusion of the alternate juror in this number would require that any member of a jury venire who had sat in a courtroom where a similar case had been tried would then suffer from the same alleged "implied bias."
[4] It is well settled that jurors called for service for a full week period may sit on more than one case during their week of service. State v. Hines, 311 So.2d 871 (La.1975). There was, therefore, no error in the returning of the names of the members of the jury which sat on the case heard prior to Nathaniel Lee's case to the petit jury venire for service in other cases to be tried that week. See La.C.Cr.P. art. 416.
[5] In denying defense counsel's blanket challenge for cause, the trial judge stated:

The defense counsel has objected and would like all jurors who served yesterday on the jury excused for cause. The Court is going to denywait Billlet me get my reasons in.
* * * * * *
The Court notes for the record that the two cases are in fact very similar, however, I believe that the jurors understand what the issues will be, and I think that they understand. It's not going to be a question of simply rubber stamping a prior verdict whether they'd have to assess credibility of this officer. This officer who will testify is not the same officer. So you don't have the same to come back in and testify, who was the undercover agent at the time and, therefore, respecting defense counsel's order, I feel restrained to deny the motion for cause. For which ruling, Mr. Collins reserves his right to object in the event of a conviction.
Defense counsel also challenged each individual juror for cause as they were considered in the bench conference following the voir dire examination on the same basis, and objected to the trial court's refusal to grant his challenges for cause as each individual juror was considered. Therefore, defendant's objections have been properly preserved for review. See La.C.Cr.P. art. 800(A); State v. Passman, 345 So.2d 874, 879 (La.1977).
[6] Defendant used an additional two peremptory strikes to remove members of the jury venire who had not served on the prior jury. Further, defendant accepted without challenge a member of the jury venire who had sat as an alternate on the prior jury.
[7] See supra, note 4.
[8] La.C.Cr.P. art. 797(2) states:

The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence. (Emphasis added).
[9] In addition to the material quoted, supra, the dissenting judge on the court of appeal included the following exchanges in her dissent as evidence of the prosecutor's "insist[ence] on directing these juror's attention during voir dire examination to similarities between the cases by framing his questions to deposit in their minds his belief that the cases involved the same elements, the same mode of distribution, [and] the same use of an undercover agent," Lee, 625 So.2d at 655 (Cooks, J., dissenting):

(9) Q. "Ms. Hauser, how do you feel about serving on this jury?
A. I feel
Q. Reasonably comfortable?
A. Yes.
Q. I think this is pretty much the same type of case. Would the fact that what ever your verdict was, came out that way, prejudice you in any way against Mr. Lee?
A. I don't think so.
Q. It would not?
A. No ..."
(10) Q. "Ms. Suard, you don't feel that as a result of listening to yesterday's case and coming to whatever conclusion you came to, that you might be prejudice toward this case and coming to the same conclusions?
A. No, I don't think so.
Q. You could look at it independently?
A. I'd have to listen to it.
Q. You would try?
A. I would try my best.
Lee, 625 So.2d at 652 (Cooks, J., dissenting) (Emphasis added in dissent).
However, review of the record clearly shows these particular exchanges were between the named panelists and Mr. Collins, attorney for the defendant. Therefore, these exchanges not only fail to provide support for defendant's argument, but in fact militate against defendant's argument in that they demonstrate defense counsel was also representing to the panelists that defendant's case was similar to that on which the jurors had sat the previous day, in an effort to ascertain whether those jurors with prior service were in fact still impartial after their experience of sitting on the other jury.
[10] The rule of LaBostrie, 358 So.2d at 1247-48, i.e., that prior, and even recent, service by a juror on a jury which has tried a similar case is not, standing alone, enough to sustain a challenge for cause, is the majority rule in both the federal court system and the courts of the other states. See, e.g., United States v. Carranza, 583 F.2d 25, 27-29 (1st Cir.1978), and cases cited therein; United States v. Garza, 574 F.2d 298 (5th Cir.1978), and cases cited therein; United States v. Riebschlaeger, 528 F.2d 1031, 1032-33 (5th Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976), and cases cited therein; Kirkland v. State, 786 S.W.2d 557 (Tex.App.Austin, 1990) ("It is well settled that it is not a ground for disqualification that prospective jurors have served on a jury in a case against another defendant charged with an offense of the same character ... [t]he rule is similar in all federal courts. (citations omitted)"); Houston v. State, 743 S.W.2d 751, 752 (Tex.App.Houston (1 Dist.), 1987) ("In some districts, repeat jury service is inevitable because of the small population base from which jury panels are selected. There is nothing wrong with this practice."); Boyd v. State of Wyoming, 528 P.2d 287, 290 (Wyo.1974), cert. denied, 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975); Zartman v. State of Alaska, 667 P.2d 1256, 1257 (Alaska Ct.App.1983) ("The trial court denied the challenges for cause, reasoning that the overwhelming majority of courts had refused to imply bias from prior jury service on similar cases." ... "We find it unnecessary in this case to decide whether to follow the majority of courts which reject the doctrine of `implied bias' based only on prior jury service in similar cases with similar witnesses, or the minority of courts which adopt that doctrine.").
[11] Defendant asserts in brief that his case and the preceding day's case were "almost identical." However, while each case required the prosecutor to prove the same elements against the respective defendants, the method of proving those elements was not the same, and the police officers involved as undercover agents were also different. The preceding day's case involved a defendant charged with multiple counts of distribution of cocaine, and was proved by the testimony of several persons, including an undercover officer. In contrast, defendant Lee's case involved one count of distribution of cocaine, and was proved, primarily, by the testimony of a single, and different undercover agent, Officer Gant. Therefore, there is a significant difference in the two in that in Lee's case, the jury was called upon to decide the case purely through a credibility determination, i.e., whether they believed Officer Gant's testimony, whereas in the preceding day's case, the jury was able to decide the case on the basis of cumulative testimony from several sources. This distinction was clearly recognized by defendant's attorney, as he acknowledged during his voir dire of panelist Judith Jackson:

Q. Ms. Jackson, you were on the jury yesterday, and you said that simply because you were on a jury yesterday that you would not rubber stamp this case with the same decision that ya'll came to in that one. Is that correct?
A. Right.
Q. You'd look at the facts separately?
A. Yes, sir.
Q. Yesterday's case was not a one on one, there were more than one witness. Is that correct?
A. Yes.
Q. This is a one on one. Does that alter or change the way you think about your approach to these facts?
A. No, sir.
Q. You would not approach them more critically and more carefully?
A. I would just listen to the facts.
Q. And you would come to a decision based upon who you believed?
A. Yes, but I wouldn't give it any more credibility because of a person's status.
Q. You would simply look at the facts that you believed to be true? Is that correct?
A. Yes, sir.
Q. And you would reject those that you did not believe, regardless of who said it, whether it's a police officer or Nathaniel. Is that correct?
A. Yes, sir.
[12] After review of the entire record, we find the remainder of defendant's assignments of error lack merit and need not be discussed.